UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES QUINLAN and REGINA BOGGIO,    :

        Plaintiffs,      :
    -against-      :    **MEMORANDUM AND ORDER**

EXEL DIRECT INC. and RAFAEL FERNANDEZ, :      11-CV-8739 (KNF)

        Defendants.      :
------------------------------------------------------------------X
EXEL DIRECT INC. and RAFAEL FERNANDEZ,
               :
        Third Party Plaintiffs,
               :
    -against-
               :
CONSOLIDATED EDISON OF NEW YORK,
CABLEVISION OF SOUTHERN WESTCHESTER, :
INC., and VERIZON NEW YORK, INC.,
               :
        Third Party Defendants.
------------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

*Introduction*

        James Quinlan ("Quinlan") and Regina Boggio ("Boggio"), Quinlan's spouse, assert

negligence and loss of services against Exel Direct Inc. and Rafael Fernandez ("Fernandez").

(Docket Entry No. 131). The plaintiffs alleged that, on July 12, 2011, at approximately 2:26

p.m., Quinlan was inside his motor vehicle that was parked in front of his home at 67 Holls

Terrace West, Yonkers, New York, when Fernandez, while operating a truck, crashed into

overhead power lines, knocked down telephone poles and caused a downed power line to strike

Quinlan's motor vehicle and Quinlan to be ejected approximately four feet out of his motor

vehicle and onto the street. Quinlan was seriously injured.

The defendants filed a third-party complaint against Consolidated Edison of New York ("Con Edison"), Cablevision of Southern Westchester, Inc. ("Cablevision") and Verizon New York Inc. ("Verizon").  The third-party complaint asserts two causes of action against each third-party defendant as follows:

> if plaintiffs were caused to sustain injuries and damages as alleged in the Amended Complaint through the carelessness, negligence and/or recklessness as plaintiffs allege, which the defendants/third-party plaintiffs specifically and expressly deny, and if plaintiffs were caused to sustain said injuries and damages through wrongful conduct other than through their own culpable conduct and contributory negligence, then the defendants/third party plaintiffs will be damaged by the aforesaid negligence and fault of [the third-party defendant] and

(1) "will be entitled to common law indemnification from [the third-party defendant] from any judgment or settlement obtained against or from the defendants/third-party plaintiffs"; and (2) "if plaintiffs obtain recovery or judgment against the defendants/third-party plaintiffs, [the third-party defendant] will be abliged [sic] to contribute to the amount of said recovery to the extent that each is held responsible to the plaintiff on the basis of an apportionment of negligence." (Docket Entry No. 135).  The parties consented to the jurisdiction of a magistrate judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  Before the Court are the third-party defendants' (the "movants") motions for summary judgment, made pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Docket Entry Nos. 151, 157 & 161).  The third-party plaintiffs oppose the motions.

On June 6, 2014, the Court gave notice to the parties that it intends to resolve the motions based on a ground not raised by the motions, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, namely, failure to assert a negligence claim against the movants, and directed the parties to respond to the notice.  The third-party plaintiffs responded, contending:

It is, and has always been, the pleaded allegation and position of the defendants/third-party plaintiffs Exel and Fernandez that had the utility lines/cables been maintained at the appropriate overhead clearance height above the public thoroughfare open to trucks, the contact between the truck and wires would not have occurred and this accident would not have ensued.

The third-party plaintiffs maintain that they alleged in their pleading that: (a) "the utilities that placed [their wires] across a public thoroughfare owed motorists and pedestrians a duty of care that their height and position would not interfere or obstruct traffic thereby causing injury or damages"; (b) "these wires were dangerously low at the time of the accident"; (c) "it was the negligent condition and positioning of this property owned and maintained by the third-party defendants that caused, at least in part, the contact between the truck and the wires which in turn landed on [the plaintiff's] vehicle." According to the third-party plaintiffs, the movants never made "a FRCP 12(b)(6) motion seeking dismissal of the third-party action on the basis of failure to state a claim," and they had fair notice of the third-party plaintiffs' negligence claims against them. The third-party defendants did not respond to the Court's June 6, 2014 order. The Court considered the plaintiffs' response and will resolve the motions on the merits.

*Undisputed Material Facts*

On July 12, 2011, Quinlan resided at 67 Holls[1] Terrace West, which is located on the west side of the street, in Yonkers, New York. At approximately 2:30 p.m. on that day, Quinlan parked his vehicle in front of his home, putting it in the park gear. After he removed the ignition

---

[1] Although the unsigned and uncertified transcript from Quinlan's deposition, submitted by each third-party defendant in support of its motion, appears to suggest that Quinlan used the words "Hollster Terrace West" when referring to the street where his house is located and the underlying event occurred, all other evidence submitted in connection with the summary judgment motions indicate that the street at issue is Holls Terrace West, not "Hollster Terrace West," and the parties do not appear to dispute that fact.

key and opened the door to exit his vehicle, an overhead wire came down on the whole length of Quinlan's car. Once outside his vehicle, Quinlan observed the wires strewn across the hood of his car. He also saw a truck traveling north on Holls Terrace West, with wires dangling from it.

On July 12, 2011, Fernandez was working as a truck driver for Exel Direct Inc., delivering Sears appliances. On that day, he drove a truck that was 12 feet by 7 inches high and 26 feet long onto Holls Terrace West. At some point, a pole came down. Also at some point, the overhead wires became entangled with the truck. Fernandez could not recall how the wires looked.

### Verizon's Contentions

Verizon contends no evidence exists of its negligence or that it caused or contributed in any manner to the alleged incident. According to Verizon, no evidence shows that Fernandez "struck a Verizon wire" with the truck he was driving "or that the wire or wires that he [is alleged to have] struck were impermissibly low," or "where the truck [is alleged to have] struck the wire(s)." Verizon asserts that, despite numerous depositions, "no one was able to identify the wire that Mr. Fernandez [is alleged to have] struck and/or caught while driving the truck," and no evidence exists "to suggest that the wire or any other equipment involved was owned, maintained, controlled, managed, repaired, operated or installed by Verizon prior to . . . July 12, 2011." Thus, absent evidence establishing ownership of the wire Fernandez is alleged to have caught while driving, or the precise location and position of the wire at issue, or any facts evidencing negligence with respect to maintaining the wire prior to the accident, summary judgment for Verizon is warranted.

Verizon maintains that Fernandez's negligence was the sole proximate cause of the incident because he "failed to stop the truck he was driving once it caught the wire, and caused wires and utility poles to be pulled down and dragged by his truck down a residential street."

4

Verizon asserts that Fernandez was negligent as a matter of law because his conduct violated New York Vehicle and Traffic Law § 1162.

Verizon contends that the third-party plaintiffs cannot establish the existence of a dangerous condition that was allegedly created by Verizon or that Verizon had actual or constructive notice of any such condition causing the accident.  According to Verizon, no evidence shows that it was ever notified of any low-hanging wires or any prior incidents of trucks catching wires on Holls Terrace West.

***Cablevision's Contentions***

Cablevision contends that no evidence of negligence on its part exists, and "no witness identified the wire that came in contact with the box portion of the truck as being owned, maintained, controlled, managed, repaired, operated or installed by Cablevision prior to July 12, 2011."  Cablevision asserts that its representative Michael Haney ("Haney") stated in his deposition that Cablevision was not notified of the incident that occurred on July 12, 2011, and it did not dispatch a repair crew to the scene after the incident.  According to Cablevision, at his deposition, Verizon's witness Frank Melendez ("Melendez") identified "the wire that was draped behind the truck cab," from the photograph taken at the scene of the accident, stating that it belonged to Con Edison based on "the structure of the cable and the fact that the wire was wrapped with the strand."  Moreover, he identified the wires "lying on the ground in the photograph . . . as either being Cablevision or Verizon service drop wires, he could not be sure."  Thus, "[a]bsent the critical evidence that Cablevision was in any way associated with the wires that were arguably snagged by the truck operated by Mr. Fernandez," the third-party complaint must be dismissed.

Cablevision asserts that Fernandez's negligence was the sole proximate cause of the incident because he "failed to ensure that his vehicle could pass down the City of Yonkers Street without coming into contact with overhead wires" and "also failed to stop his vehicle once snagged by the wire before all of the wires and multiple poles had been pulled down over a distance of two blocks." Cablevision asserts that Fernandez was negligent as a matter of law because his conduct violated New York Vehicle and Traffic Law § 1162.

Cablevision contends that no evidence exists showing that Cablevision had either actual or constructive notice of any low hanging wires in the vicinity of the accident. Cablevision maintains that a sanitation worker, Matthew McMahon ("McMahon"), testified at his deposition that "he did not think that the box truck that was involved in the accident was as high as the sanitation trucks that travel through the city of Yonkers," and "[i]n light of the fact that there is proof that a sanitation truck drove in the neighborhood to collect trash on the morning of the incident and no utility wires of any kind were affected, there is no way that third-party plaintiffs can establish that Cablevision had notice of any low hanging wires prior to the incident involving the truck."

*Con Edison's Contentions*

Con Edison contends that no evidence of its negligence exists because "no one has been able to identify the wire that was pulled down by Fernandez as a wire being owned, maintained, controlled, managed, repaired, operated or installed by Con Edison prior to July 12, 2011." Moreover, "[t]here is no evidence that the Con Edison wires were lower than the standard required in the specifications," and "[t]here is no question that the Con Edison wires are the highest wires on the utility poles in the service territory," to which "[n]ot only did the Con Edison witnesses testify," but "even a lay person like Philip Mathai ["Mathai"] knows the Con Edison

6

wires are the highest on the pole."  Con Edison asserts that "[t]here is no question that after Fernandez knocked down the utility pole on Holls Terrace West and uprooted a second pole on the corner with Holls Terrace North all wires came down.  The issue here is whose wire was pulled down by Fernandez," and "[n]either Fernandez nor any other witness has identified the 'low wires' allegedly seen by Fernandez, as being owned by Con Edison."  Similarly, "there is no evidence that the utility poles damaged by Fernandez were compromised in any way prior to the acts of Fernandez."

Con Edison asserts that Fernandez's negligence was the sole proximate cause of the incident, because he failed to observe a wire that was hanging over the area where he was driving and failed to stop and "have one of his helpers get out of the truck and observe to make sure the truck was not catching the wires."  Con Edison contends that Fernandez was negligent, as a matter of law, because his conduct violated New York Vehicle and Traffic Law § 1162.

According to Con Edison, no evidence exists that "Con Edison had any notice whether actual or constructive notice of any low hanging wires in the vicinity [of the occurrence]," and "[t]here have been no prior incidents of trucks snagging or catching onto any Con Edison wires on Holls Terrace West."

### Third-Party Plaintiffs' Contentions

The third-party plaintiffs contend that material questions of fact exist regarding the ownership of the subject utility wires.  According to the third-party plaintiffs, each third-party defendant confirmed that it serviced the street in question with overhead utility wires, and each failed to meet its "burden of proof to eliminate questions of fact and to show that the wires that got snagged were not [its] wires."  The third-party plaintiffs assert that "each utility has attempted to point the finger at the others in an attempt to pass responsibility and their testimony implicates

the other utilities." They maintain that "[i]t is not enough for the movant to claim summary dismissal on a Rule 56 motion because the defendants cannot prove which of the utilities' low hanging wires . . . got entangled with the defendants' vehicle."

The third-party plaintiffs contend that material questions of fact exist about the occurrence of the event and the minimum standard overhead clearance requirements for wires stretching across a roadway and residential driveway. They assert that "the specific location where the defendants' vehicle became entangled with the utility wires" is at issue. For example, Fernandez testified that he made a left turn onto Holls Terrace West and, after driving for about 40-50 feet, noticed his truck was entangled with overhead wires, but he never backed up his truck into a driveway. A non-party witness, Mathai, testified at his deposition that "he observed the defendants [sic] truck back into a driveway on Hudson View Terrace and as the truck was pulling out of the driveway, saw it get caught on a wire stretching across that driveway." However, Mathai also stated that "the truck had to back up into a driveway on Holls Terrace West," and as it "backed into the driveway and then pulled out it caught wires from the pole to the house on the box part. The driver started down Holls Terrace West towards Hudson View Drive." Moreover, a non-party witness, McMahon, stated, in his sworn statement, that he observed the truck at issue "traveling in the opposite direction toward Hudson View Drive (heading south). He could see cable and wires caught on the top of the front of the truck." In his deposition, McMahon stated that he observed the truck "taking down wires" and "could not recall the street that the defendants' truck was on when he first saw it," but confirmed "it was not on a driveway." Thus, at least two witnesses stated that the entanglement happened on a road, not a driveway. Furthermore, a question of fact remains whether the suspended wire met reasonable overhead

8

clearance height, and the third-party defendants' own testimony on the issue is contradictory and inconsistent.

The third-party plaintiffs contend that Fernandez acted reasonably under the circumstances as his vehicle approached the low hanging wires and his acts are not the proximate cause of the accident.  They assert that New York Vehicle and Traffic Law § 1162, providing that "no person shall move a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety," does not apply because "it is clear from Fernandez's testimony (and all the witnesses) that his vehicle was never stopped on Holls Terrace West as it approached the low hanging overhead wires."  The third-party plaintiffs also maintain that material questions of fact exists about the condition of the fallen utility pole, and each third-party defendant created the condition of low hanging wires and failed to perform routine inspections.

### Verizon's Reply

According to Verizon, "[f]or the purposes of this motion where the Court will accept the moving plaintiff Fernandez's version of events as true – that he struck the unidentified wire while driving at a snail's pace on Holls Terrace West – there is still no non-speculative evidence that Mr. Fernandez struck a Verizon wire that was impermissibly low."  Furthermore, "there is no issue of fact as to Verizon's lack of notice," and "no proof that the low hanging wires existed for any length of time such that Verizon should have discovered the condition."

### Cablevision's Reply

Cablevision contends that "no party can identify the wire that Mr. Fernandez came into contact with," and "there is no case law . . . to hold a utility responsible for an accident for merely owning wires in the vicinity of a wire that was entangled by the operation of a vehicle."  The

factual inconsistency about where the wire was caught, when resolved by a jury, "will not in any way impact the total lack of any non-speculative evidence as to whether the wire or wires contacted by the truck operated by Mr. Fernandez was installed, maintained or owned by Cablevision."  Moreover, Cablevision did not have any notice of low hanging wires in the vicinity of the incident prior to the date of the incident.

### Con Edison's Reply

Con Edison contends that "[n]umerous witnesses in this case have all testified that the Con Edison wires are the highest wires on the pole," and absent any evidence of "whose wire Fernandez entangled his truck with, there is no evidence of any negligence by Con Edison." Moreover, no question of fact exists regarding the condition of the utility poles and that argument is a "red herring," since "[t]here was no indication that there were any defects or complaints involving the poles."  Con Edison did not have any notice of low hanging wires in the area of the incident prior to the date of its occurrence.

### Legal Standard

#### Summary Judgment

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Local Civil Rule 56 provides that, on a motion for summary judgment, the movant must submit a statement "of the material facts as to which the moving party contends there is no genuine issue to be tried. " Local Civil Rule 56.1(a). Each statement, pursuant to Local Civil Rule 56.1, "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

> When a defendant has moved for summary judgment on the ground that undisputed facts reveal that the plaintiff cannot establish an essential element of the claim, on which element the plaintiff has the burden of proof, and the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on that element, summary judgment should be granted. If the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment.

Burke v. Jacoby, 981 F.2d 1372, 1379 (2d Cir. 1992) (internal citations omitted).

In determining whether a genuine issue as to any material fact exists, a "district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). Additionally, "the court is not entitled to weigh the evidence" and "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Id.

New York Negligence

"To prove a prima facie case of negligence, the plaintiff must establish the existence of a

duty on the defendant's part to the plaintiff, the breach of the duty, and that the breach of the duty

was a proximate cause of an injury to the plaintiff." <u>Gordon v. Muchnick</u>, 180 A.D.2d 715,

579 N.Y.S.2d 745, 746 (App. Div. 2d Dep't 1992) (citing <u>Akins v. Glens Falls City Sch. Dist.</u>,

53 N.Y.2d 325, 441 N.Y.S.2d 644 (1981)).  "To establish a prima facie case of proximate cause, a

plaintiff must show 'that the defendant's negligence was a substantial cause of the events which

produced the injury.'" <u>Maheshwari v. City of New York</u>, 2 N.Y.3d 288, 295, 778 N.Y.S.2d 442,

446 (2004) (quoting <u>Derdiarian v. Felix Contr. Corp.</u>, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169

(1980)).

<u>New York Common Law Indemnification</u>

"The right to indemnity, as distinguished from contribution, . . . springs from a contract,

express or implied, and full, not partial, reimbursement is sought." <u>McFall v. Compagnie</u>

<u>Maritime Belge</u>, 304 N.Y. 314, 328 (1952).  No express contractual indemnification claim is

asserted in the third-party complaint.  "The general rule is that a right of implied indemnification

will arise in favor of one who is compelled to pay for another's wrong." <u>Margolin v. New York</u>

<u>Life Ins. Co.</u>, 32 N.Y.2d 149, 152, 344 N.Y.S.2d 336, 338 (1973).  "Implied indemnity is a

restitution concept which permits shifting the loss because to fail to do so would result in the

unjust enrichment of one party at the expense of the other." <u>Mas v. Two Bridges Assocs.</u>,

75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 674 (1990).  "Consistent with the equitable

underpinnings of common-law indemnification, our case law imposes indemnification obligations

upon those actively at fault in bringing about the injury, and thus reflects an inherent fairness as

to which party should be held liable for indemnity." <u>McCarthy v. Turner Constr., Inc.</u>, 17 N.Y.3d

369, 375, 929 N.Y.S.2d 556, 561 (2011) (citations omitted).  Additionally,

a party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence or actual supervision on its own part. But a party's (e.g., a general contractor's) authority to supervise the work and implement safety procedures is not alone a sufficient basis for requiring common-law indemnification. Liability for indemnification may only be imposed against those parties (i.e., indemnitors) who exercise actual supervision.

Id. at 377-78, 929 N.Y.S.2d at 563.

New York Common Law Contribution

"A claim for contribution rises and falls based on the existence of separate tortfeasors."

AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co., 5 N.Y.3d 582, 594, 808

N.Y.S.2d 573, 580 (2005)(citations omitted).

The right to contribution is not founded on nor does it arise from contract and only ratable or proportional reimbursement is sought in an action for contribution. In the absence of statutory provision one of several wrongdoers, who has been compelled to pay damages for the wrong committed, cannot obtain contribution from the others who participated in the commission of the wrong.

McFall, 304 N.Y. at 327.

"[I]n contribution, the tort-feasors responsible for plaintiff's loss share liability for it. Since they

are in pari delicto, their common liability to plaintiff is apportioned and each tort-feasor pays his

ratable part of the loss." Mas, 75 N.Y.2d at 689-90, 555 N.Y.S.2d at 674.

***Application of Legal Standard***

New York Negligence

The movants do not contest the first element of the negligence claim, namely, that it is

undisputed that they owed a duty to the third-party defendants. The thrust of their argument

about the absence of negligence is that no evidence exists in the record to show that their

respective wires were struck by or came into contact with Fernandez's truck, or that any wire(s)

that came into contact with Fernandez's truck was impermissibly low. While it is undisputed that

a pole came down and the overhead wires became entangled with the truck, material issues of fact exist concerning: (a) who owned, controlled, maintained or operated the overhead wire(s), the transformer and the pole at issue; (b) whether the wire(s) was hanging dangerously low; (c) whether the truck struck the overhead wire(s); (d) whether the transformer exploded and, if so, when in the sequence of events; and (e) when the pole came down in the sequence of events.

Verizon's contention that "there is no testimony and no evidence to suggest that the wire or any other equipment was owned, maintained, controlled, managed, repaired, operated or installed by Verizon prior to . . . July 12, 2011," and Cablevision's contention that no "critical evidence" exists "to establish that Cablevision was in any way associated with the wires that were arguably snagged by the truck," are not supported by the record. James R. Feeney ("Feeney"), Con Edison's field operational planner, emergency response group, who responded to the July 12, 2011 incident, was deposed; his job was to determine whether the wires that came down were alive. Feeney testified, at his deposition, that upon arriving at the scene, he saw a wire "going across the road," which was "a cable or telephone wire," and not "Con Ed equipment." Feeney stated that he knew it was not Con Edison's equipment because he was "trained in what is Con Ed equipment and what is cable and telephone [equipment]," and that "[i]t's encased in black like a trunk type line. . . . It's not a Con Ed line." Melendez, Verizon's local manager who was not present at the scene of the incident, after viewing a photograph of Fernandez's truck shown to him during the deposition, testified that he believed that the wire "that runs up into the area just behind the cab," was Con Edison's because "Con Edison's cable is usually wrapped with their strand," and that is not how Verizon's cable looks. Melendez also testified that the wire(s) on the ground appeared to him to be "either telephony or Cablevision," but he was not sure. Michael Haney, a Cablevision's area construction manager, testified, upon viewing a photograph of

14

Fernandez's truck, that it appeared to him that a wire coming from behind the cab of the truck was an electrical wire.

Thus, contrary to the movants' contentions, conflicting evidence exists in the record about the ownership and control of the overhead wire(s) involved in the incident.  Since Verizon, Cablevision and Con Edison failed to present undisputed evidence establishing that the wire(s) and equipment involved were not owned, maintained, controlled, repaired, operated or installed by them, a disputed issue of material fact respecting ownership, maintenance and control of the wire(s) remains to be determined by the jury.  See Guzman v. CSC Holdings, Inc., 85 A.D.3d 1113, 1115-16, 926 N.Y.S.2d 613, 616 (App. Div. 2d Dep't 2011) (Verizon established its entitlement to summary judgment by submitting evidence sufficient to demonstrate that it did not own, install, maintain, or repair the subject wire, and that it did not cause the wire to be in a dangerously low position, or have actual or constructive notice of that condition, while Cablevision failed to eliminate all triable issues of fact as to whether it had constructive notice of the wire's positioning).  Moreover, Fernandez testified that the overhead wire(s) hanging over the street "looked low" and was "[s]agging" in a "U" shape."  Whether the wire(s) was hanging "dangerously low" is a disputed issue of material fact to be determined by the jury.  Accordingly, granting summary judgment to the movants on the third-party plaintiffs' negligence claim is not warranted.

The movants' next argument, that summary judgment in their favor is appropriate because the sole proximate cause of the plaintiff's injuries was Fernandez's negligence and Fernandez was negligent as a matter of law because he violated certain statutory provisions, is meritless.  The evidence in the record concerning the plaintiff's negligence claim against Fernandez contains numerous disputed issues of material fact, including whether Fernandez's truck struck the

15

overhead wire(s). Whether Fernandez's negligence was the sole proximate cause of the plaintiffs' injuries and whether he violated certain statutory provisions is disputed. Thus, summary judgment based on this ground is improper.

The movants' third argument is that summary judgment in their favor is warranted because no evidence exists that the movants had actual or constructive notice of any low hanging wire(s). As the third-party plaintiffs point out, whether the movants had actual or constructive notice "would not absolve the third-party defendants from liability because first, they created the condition of low hanging wires and second they failed to perform routine inspections." Since the third-party plaintiffs are not proceeding on a theory of liability predicated on actual or constructive notice, summary judgment, based on the argument that no evidence exists in the record to establish that the movants had actual or constructive notice of any defective condition, is not warranted.

New York Common Law Indemnity and Contribution

Given that the movants are not entitled to summary judgment on the third-party plaintiffs' negligence claims against them, they are not entitled to summary judgment on the common law indemnity and contribution claims either. This is so because those claims depend on whether any movant is found to be a tortfeasor in this action.

*Conclusion*

For the foregoing reasons, the movants' motions, Docket Entry Nos. 151 (Verizon), 157 (Cablevision) and 161 (Con Edison), are denied. The Clerk of Court is directed to close Docket

16

Entry Nos. 99 (Verizon), 104 (Con Edison), 110 (Cablevision) and 156 (Cablevision) because

those motions have been superseded.

Dated: New York, New York                          SO ORDERED:
      July 3, 2014

                                              KEVIN NATHANIEL FOX
                                              UNITED STATES MAGISTRATE JUDGE